## SPENCE *vs.* SAVERY, ADM'R, &C.

1. When letters of administration are granted to a sheriff *virtute officii*, and after his removal from the State *ex parte* proceedings are instituted against him to compel a settlement of his administration, all the preliminary orders of the court must show that he was proceeded against in that capacity ; especially when it is shown that, after the expiration of his term of office as sheriff, he took out letters of administration individually, and gave a new bond with new sureties.

2. The objection may be raised for the first time on error assigned by the defendant, that the preliminary proceedings, in which he is described as " administrator *de bonis non*," are not sufficient to support a final decree, by default, against him as " late sheriff of said county, and *by virtue of his office as sheriff administrator de bonis non*," &c.

3. And the fact that the estate had been previously declared insolvent on the report of the defendant, will not prevent him from raising the objection, when the record shows that the estate was not otherwise treated as insolvent, and the final decree against him is in favor of a succeeding administrator *de bonis non.*

ERROR from the Court of Probate of Talladega.

IN the matter of the estate of John C. Calhoun, deceased.

THE record shows the following facts : One D. A. Griffin, as sheriff of Talladega, was appointed administrator of said Calhoun's estate in September, 1841, and on the 17th March, 1842, the appellant, who succeeded Griffin as sheriff, was appointed administrator *de bonis non* by virtue of his office ; he reported the estate insolvent in July, 1842, and it was so declared by the court on the same day ; afterwards, on the 6th May, 1845, his term of office as sheriff having expired, letters of administration on said estate were granted to him in his individual capacity, and he thereupon executed a new bond with new sureties. In September, 1846, his sureties on this last bond having become insufficient, he was cited by the court to give new sureties ; and having failed to comply with this requisition, he was subsequently removed from the administration, which was then committed to William Easley, as sheriff of the county, on the 7th September, 1846.

At a special term of the court, held on the 8th June, 1847, a citation was ordered to issue against Spence, " late admin-

istrator of said estate of John C. Calhoun, deceased," requiring him to appear on the first Monday in August next thereafter," and exhibit his accounts and vouchers for settlement with William Easley, the present administrator;" but no further proceedings seem to have been had under this order. In December, 1848, after the expiration of Easley's term of office, the succeeding sheriff being interested in the estate as one of the sureties on Spence's second bond, the administration of the estate was committed to Jos. N. Savery, the appellee, as coroner of the county. At the regular January term, 1849, Savery filed his petition in court, suggesting that Spence had been appointed administrator of the estate in 1842, and had never made a settlement of his administration, and praying that a citation might issue requiring him to appear and make such settlement on the first Monday in February then next.

At the next regular term, on the 5th February, 1849, "came Joseph N. Savery, administrator *de bonis non* of the estate of William King, deceased, and as a creditor of the estate of John C. Calhoun, deceased, moves the court for an order of publication against said Solomon Spence, requiring him to file his accounts and vouchers for settlement of said estate;" and it appearing to the satisfaction of the court that said Spence was appointed administrator *de bonis non* of said estate in 1842, and that he has removed beyond the jurisdiction of the court without having settled his said administration, and that Savery, as the administrator of said William King, is a creditor of said Calhoun's estate,—it was therefore ordered, that publication be made, &c., requiring said Spence to appear before the court on the first Monday in May next thereafter, and file his accounts and vouchers for settlement of said estate.

At the regular May term, 1849, as the order recites, "Solomon Spence, administrator *ex officio* of said estate, in obedience to a former order of this court, a non-resident, was cited by publication," &c., "to appear in court on this day, and file his account current and vouchers for a settlement of said estate; and said Spence not having appeared, as required by said citation, thereupon Lewis E. Parsons appeared, and asked for a decree against said Spence, and in favor of Jos. N. Savery,

the present administrator of said estate ; thereupon came John T. Morgan, who stated to the court, that he appeared as attorney for said Spence, for the purpose of making proof to the court as to the manner in which the account current should be stated against said Spence, and did not appear for the purpose of filing an account for said Spence ; and it was ruled by the court, that said Morgan could not appear for that purpose, and in that way, nor offer his proof ;" and the court then proceeded, as on the default of said Spence, to state an *ex parte* account against him, and rendered the following decree : " It is therefore ordered, adjudged, and decreed, that said Joseph N. Savery, administrator *ex officio* of the estate of said John C. Calhoun, deceased, recover of said Solomon Spence, late sheriff of said county, and administrator of the estate of said Calhoun, the sum of $4,461 68, the amount of the account this day stated against him ; for which let execution issue." On the 6th August, 1849, an execution having been issued on this decree, and returned "no property found," a statutory judgment was rendered against the sureties of said Spence on his official bond as sheriff.

At a special term of the court, held on the 14th July, 1851, as the next minute entry recites, " came Joseph N. Savery, administrator *de bonis non* of the estate of William King, deceased, and as a creditor of the estate John C. Calhoun, deceased, moved the court for an order of publication against Solomon Spence, requiring him to file his accounts and vouchers for settlement of his administration of said estate ; and it appearing to the satisfaction of the court that said Spence was appointed administrator *de bonis non* of said estate on the 17th day of March, 1842, and that he has removed beyond the jurisdiction of the court without having settled his accounts as such administrator, and that the said Joseph N. Savery, as the administrator of the estate of said King, is a creditor of said estate, it is therefore ordered," &c., that publication be made for three consecutive months, requiring said Spence to appear on the second Monday in November next, and file his accounts and vouchers for a settlement of said estate.

The minute entry of November 10th, 1851, after setting out at length the order of 14th July preceding, recites that pub-

lication had been made in pursuance of said order for three months, and that said Spence came not, but made default; whereupon the court proceeded to state an *ex parte* account against him, ascertaining a balance in his hands of $3,603 76, and ordering that the account so stated be reported for allowance on the second Monday in January next thereafter, and that notice thereof by publication for three consecutive weeks be given accordingly.

At the regular January term, 1852, "came Jos. N. Savery, administrator *de bonis non* of the estate of John C. Calhoun, deceased;" and the minute entry, after setting out the orders of the preceding July and November terms, and reciting that publication had been made for three consecutive weeks as directed by said last mentioned order, and that Spence came not, but made default,—proceeds thus : " It is therefore ordered by this court, that the account stated by this court, at the regular term held on the 10th day of November last, be in all things allowed and confirmed, and hereinafter recorded as the final settlement by said Spence of his administration of the said estate, as follows :" &c. The account is then copied in the entry ; after which follows the decree, in these words : " It is therefore ordered, adjudged, and decreed by this court, that the said Joseph N. Savery, as the administrator *de bonis non* of the estate of said John C. Calhoun, deceased, recover of the said Solomon Spence, late sheriff of said county, and *ex officio* administrator *de bonis non* of the estate of said John C. Calhoun, the sum of $3,603 76, the amount of the account stated against said Spence, as such administrator *de bonis non*, at the regular term of this court held on the 10th day of November, 1851, and this day allowed and confirmed ; for which let execution issue."

On this decree Spence sued out a writ of error, and he here assigns for error, " 1st, that the court erred in rendering any decree in favor of Joseph N. Savery, who had been the administrator *de bonis non* of Calhoun's estate in virtue of his office of coroner of Talladega county, but whose term of office, as shown by the record, had expired before the decree of January 12, 1852, was rendered ; 2d, in rendering any decree in the case on the 12th January, 1852 ; 3d, in rendering a decree against said Spence as late sheriff of Talladega

county, and *ex officio* administrator *de bonis non* of Calhoun, when the notice by publication had no reference to that administration, but to another and subsequent administration; 4th, the court erred as shown by the record."

MORGAN & MARTIN, for plaintiff in error:

1. The estate of Calhoun was never regularly declared insolvent, and the court erred in so treating it, on the settlement. If the estate is not insolvent, it was error to decree in favor of an administrator *de bonis non*, against an administrator *de bonis non.* The statute of 1846 only authorizes such a decree where an administrator *de bonis non* calls the administrator in chief to settlement. The rule established in Willis v. Willis, adm'r, 9 Ala. 721, is applicable to this case.

2. The administration of Spence, *virtute officii,* had ceased with the expiration of his office of sheriff; and a new administration had been granted to him as an individual, and new letters had issued. This administration was essentially different from that then just expired, and was attended with new incidents; a new bond had to be given, a new oath administered, and regularly a new inventory of assets, &c., should have been made. The publication calling upon Spence to settle his accounts, refers to the first administration of Spence upon the estate, and treats him not as an individual, but as *ex officio* administrator *de bonis non* of said estate; but in the entry stating the account against Spence, he is referred to as administrator of John C. Calhoun, without any designation to show which administration is meant. The judgment is against Spence, late sheriff and *ex officio* administrator of John C. Calhoun. The account stated against Spence is founded alone upon the amount of notes received by "Solomon Spence, administrator of the estate of John C. Calhoun, deceased, of his predecessor D. A. Griffin, which, it appears to the court by proof, could have been collected by his using due diligence." In all this there is not sufficient certainty. Either the two administrations of Spence are blended and confused, or else the last administration is still open. The order for publication and the decree should have cleared up all this difficulty, and have shown which administration was being settled. If both administrations were to be settled,

the order should have shown it, so that the securities on the different bonds (Spence not appearing) could have appeared for him, and have seen that the proper decree was rendered in each case.

3. The judgment against Spence, being a summary proceeding, must disclose a sufficient state of proof to support it. The record shows that the liability of Spence was for an omission or failure to collect notes turned over to him by Griffin, his predecessor; having shown this much, the record should have further disclosed how it was that Spence became bound to collect those notes. Were they assets of the estate? Were they payable to Griffin, or the intestate? Does the record show that they were assets of the estate? Does the record show when Griffin turned them over to Spence? Suppose a declaration had been filed upon one of Spence's bonds, disclosing as a breach only the facts recited by the court to support its judgment, would it be good? It is no answer to these questions, to say that the court was not obliged to disclose the reasons or facts upon which its judgment is rested. The court has disclosed, and the record shows the reasons to be insufficient. If Spence's liability grows out of his negligence, it must be a neglect to perform some duty imposed by law.

4. The record shows that Savery was not the coroner at the time the decree in his favor, as administrator in virtue of his office, was rendered. On the 23d of December, 1848, Savery, who was then coroner of Talladega county, was appointed administrator de bonis non of the said estate, and the administration, as well by the order of the court, as by the law, was attached to the office, and not to the person. There is no evidence in the record that Savery was at any time re-appointed coroner, or administrator, in his individual capacity, of said estate; but the record does show, that on the 12th day of January, 1852, more than three years after the date of his appointment, as ex officio administrator, "Savery, who was, on the 23d day of December, 1848, appointed by the Orphans' Court of said county, administrator, &c.," was in virtue of said appointment claiming and procuring this decree against Spence. It would be dangerous, as well to the estate as to Spence, to put the assets of the estate, by the de-

cree of the court, in the hands of a late coroner, whose bond had ceased to be security for his conduct in office.

5. Which of the decrees found in the record will the court sustain, the first or the last ?

WHITE & PARSONS, *contra:*

The record shows all the facts necessary to give the court jurisdiction : that Spence, as the administrator of Calhoun, had failed to settle his accounts with the estate, and had removed beyond the jurisdiction of the court ; that Savery, as administrator of William King, was a creditor of the estate, and as such applied for and obtained the publication required by the statute ; and that this publication was made, and the account then stated. This publication brought the administrator into court for the settlement of his accounts, and he was then entitled to no further notice : the further notice required by the law was not intended for his benefit, and he cannot complain of the want of it.—Willis v. Willis, 16 Ala. 656; Davis v. Davis, 6 *ib.* 611; Treadwell v. Burden, 8 *ib.* 660. All that the administrator was entitled to, was the time intervening before the next term of the court, to avail himself of the proviso in the statute of 1843; and this he received.— Wright v. Clough, 17 Ala. 495.

The suggestion to the court was made by Savery, as administrator of King's estate, and as such a creditor of Calhoun's estate. The decree was rendered in the name of Savery, as administrator *de bonis non* of Calhoun's estate, as the representative of all the creditors of that estate, under the authority of the act of 1843. This act received an interpretation justifying this course, in Long v. Easley, 13 Ala. 239, and Willis v. Willis, 9 *ib.* 721.

The estate of Calhoun was declared insolvent in 1842, and is therefore not subject to the provisions of the act of 1843. The court had the power to act as it did on the defendant's report of insolvency, and he cannot now be heard to gainsay its insolvency.—Martin v. Baldwin, 7 Ala.; Brown v. Isbell, 11 *ib.*

The objection that Savery had no right to the judgment at the time of its rendition, cannot now be raised, even if it was a good objection : no exception was taken in the court below;

47

no objection on this ground made; no issue formed or tried on the point; and the plaintiff in error cannot now, after putting it out of the defendant's power to try this question of fact before the appropriate tribunal, be allowed to raise the objection here for the first time.—Lamkin v. Heyer, 19 Ala. 232; Croft v. Ferrell, 21 ib. 356. Even if Savery had begun this proceeding without any right to sue, the plaintiff in error must have pleaded the incapacity, either in abatement, or in bar.—5 Peters 501; 6 ib. 450; 1 Bos. & Pul. 40. If the disability accrued during the pendency of the suit, the reasons are much stronger for requiring that the defence should be interposed in the court below. But, even if it were shown that Savery had ceased to be administrator *pendente lite*, there would be no actual disability : it was still competent for him to recover, unless the defence was interposed, and he and his sureties would be liable upon their bond for the money, if recovered, or for neglect of duty, if he had failed to prosecute this suit.—Sloan v. McKinney, 19 Ala. 116; Gayle v. Elliott, 10 ib. 270; Driver v. Riddle, 8 Porter 343. A judgment by default is conclusive of the rights of the parties, and fully determines all defences which might have been urged against the demand before the judgment was rendered : the recovery of a judgment is an admission of the cause of action as laid, and that the money is legally due to the plaintiff.—McGehee v. Childress, 2 Stew. 206; Mervine v. Parker, 18 Ala. 241.

LIGON, J.—We esteem it wholly unnecessary to consider all the points presented in the assignments of error, and in the briefs of the counsel, inasmuch as we find it impracticable to sustain the judgment and decree of the Probate Court of Talladega, on the record before us.

It appears that Spence, as sheriff of Talladega county, was appointed administrator *de bonis non* of John C. Calhoun, deceased, of whom his predecessor in the office of sheriff (David A. Griffin) had been administrator *virtute officii*. The administrations of both Griffin and Spence, so long as the latter was sheriff, were strictly attached to the office of sheriff. It follows, as a consequence, that all orders, the tendency and object of which were to bring about a settlement of Spence's accounts of his administration of Calhoun's estate, while he

managed it under his appointment as administrator *ex officio*, should show that he was proceeded against in that character; especially as, upon the expiration of his term of office, he procured letters of administration to be issued to him on the same estate in his individual capacity, and gave another bond, with other sureties, who were different from those whose names appear upon his bond as sheriff.

In none of the orders of the court in this record, preliminary to the final decree against him, is it shown that he was required to settle his administration as sheriff. On the contrary, the form adopted by the Probate Court is such as would be only allowable in a proceeding against him on his administration as an individual. This being the case, it was clearly erroneous for the court below to render its final decree against him as administrator by virtue of his office, and on the return of the *fi. fa.* against him *nulla bona*, to render the statutory judgment against his sureties on his bond as sheriff, and award execution thereupon.

His sureties on his sheriff's bond, had they been advised by the notice served upon their principal, or the publication made in the newspaper, that it was designed to charge him in his character of administrator by virtue of his office of sheriff, would have had the unquestionable right to appear on the statement of the account, and question its accuracy, inasmuch as the decree founded upon it would be conclusive against them. But they could claim no such right, in a proceeding against him the object of which was, to coerce a settlement of his accounts on his individual administration.

It is insisted, however, that this objection to the proceedings should not be allowed to be taken for the first time in this court, and the case of Croft v. Ferrell *et al.*, 21 Ala. 351, is relied upon as conclusive upon this point. The cases are unlike, on the very point which controlled the decision in the case cited. In that case, the guardian was in court when the account was stated, acting through his counsel, and excepting to the ruling of the court in some respects; but, having failed to except to the ruling of the court on the question of notice, he was held to have waived it there, and this court refused to consider it when assigned for error here. In the present case, there was no appearance by the administrator, nor by any

person claiming to represent him, as counsel or otherwise, and the recitals of the decree show that it was rendered as on default of the administrator ; for it is stated, "that the said Spence came not, but made default." This, then, must be regarded as a decree, or judgment on default, and it needs no citation of authorities to establish that, in such cases, the defendant will not be considered to have waived the right to complain in the appellate court of any error or irregularity which may have occurred in the proceedings against him in the primary court. In such cases, the party complaining, or occupying the position of plaintiff, is bound, at his peril, to take such preliminary steps as will sustain the judgment of the court in his favor, or, in other words, to show a judgment legally and regularly obtained, when it is sought to be reviewed in a direct proceeding, such as this is.

As we have before said, the preliminary steps in this case are all taken against *Solomon Spence,* administrator *de bonis non* of John C. Calhoun, deceased, without, in any manner, connecting his administration with his office of sheriff. He was, as the record discloses, administrator in his own right, as well as by virtue of his office of sheriff, and consequently these preliminary proceedings must be held to have been had against him on his individual administration ; and whether they be regular or otherwise, they will not justify the decree found in the record, which is against "Solomon Spence, late sheriff of said county, (Talladega,) and *by virtue of his office as such sheriff* administrator *de bonis non* of the estate of John C. Calhoun, deceased."

As the record shows that Spence, in July, 1842, reported the estate of Calhoun to be insolvent, and the court, accepting the report, declared it such by an order of that date, it may be supposed that the conclusion we have attained in this case conflicts with the decisions of this court in the cases of Watts *et al.* v. Gayle & Bower, 20 Ala. 817, and Clarke v. West *et al.,* 5 *ib.* 117. An examination of all these cases, however, will show that there is not even a seeming inconsistency. The facts and the parties litigant in the cases cited, are essentially different from those in the case at bar, and the rules of law and practice which apply to and control them are also different. In the cases cited, the judgment or decree

of the Orphans' Court was obtained under the rules which apply to and govern the settlement of insolvent estates, and are provided by law for that purpose; and the questions presented arose between the creditors of the estate and the sureties of the administrator. Every order taken to effect the settlement, in each case, shows that the estate was treated as insolvent; and this court held, that the administrator of an estate, regularly declared *insolvent*, and settled as such, could not complain of want of notice of the time of settlement, because he was the *actor* in the matter, and considered to be always in court, and consequently cognizant of all orders taken in the proceeding to effect a settlement; and as he could not avail himself of such want of notice, neither could his sureties. But in this case, although the record shows a report of insolvency, and an order declaring the estate to be so, in the year 1842, yet there is not another order in it, up to the rendition of the decree complained of, in 1852, which treats it as an insolvent estate, and the judgment sought to be reviewed in this court is in favor of Savery, not as a creditor, but as administrator *de bonis non* of John C. Calhoun, deceased. It would, therefore, be manifestly improper, to apply to this case the rules which govern in cases of insolvent estates declared and settled as such.

Our opinion is, that the decree must be reversed, and the cause remanded.

CHILTON, C. J., not sitting.