## CHILDRESS v. CHILDRESS.

1. Where an executor purchases part of the testator's estate, he is, after the expiration of the term of credit, chargeable with the amount as cash.

2. A testator bequeathed to his wife " one thousand dollars in cash to be paid her out of the money due me (him) in the State of Virginia, from Thomas McCargo, when the same shall be collected." He also bequeathed the balance of the debt, after his wife should be paid, to his son: *Held,* that the wife was entitled to her legacy, if so much was collected of the debt, without abatement for the charges of collection; the residue of the debt being more than ample for that purpose.

3. A bequest of the balance of the debt or money due the testator from an individual named by him, after the payment of a legacy with which he had charged it, means so much as shall be realized over and above the charge, after the costs of collection shall have been paid; for these costs the estate generally, shall not be bound; it appearing from the will that the testator had specifically devised and bequeathed his property.

4. Although the second section of the act of 1830, to extend the powers of the Orphans' Court, &c. does not expressly mention legatees, yet they are entitled to the remedy it affords, and may have execution of decrees of the Orphans' Court in their favor.

5. It is no objection to a decree in favor of a legatee, that she is a co-executrix of the will—the proceeding is at her instance in the former character only.

Writ of error to the Orphans' Court of Tuskaloosa county.

It appears from the record, that the parties were both legatees under, and executors of the will of James Childress, deceased. Among other bequests by the testator, in favor of the defendant in error, is one of "one thousand dollars in cash, to be paid to her out of the money due me (him) in the State of Virginia, from Thomas McCargo, when the same shall be collected." He also bequeathed to the plaintiff "the balance of the debt, or money due me (him) in the State of Virginia, from Thomas McCargo, after my (his) wife shall receive the amount of the said debt to her above bequeathed."

Upon a final settlement of the accounts of the executors with the Orphans' Court, the plaintiff exhibited an account for about eight hundred dollars, being his expenses and commissions for collecting the debt due from McCargo, which was, including principal and interest, about fifty-nine hundred dollars. The Court refused to allow the account of the plaintiff, and rendered

a decree against him in favor of the defendant as a legatee under the will, for the sum of one thousand dollars bequeathed.

The plaintiff in his account, as executor, admits that he collected the McCargo debt, and charges himself with one thousand dollars, as due to the defendant for her legacy. He also charges himself with "his note for Arcola lots, $265 00."

B. F. PORTER, for the plaintiff in error, insisted that the Orphans' Court erred,

1. In charging the plaintiff with his note for Arcola lots, and rendering a decree against him for the amount of the same.

2. In rejecting the plaintiff's account for collecting McCargo's note, and thus charging his portion of the same with the expence of the collection.

3. In rendering a decree in favor of the defendant for one thousand dollars, the amount of the monied legacy bequeathed her by the testator.

PECK & CLARK, for the defendant : The writ of error in this case, does not authorise this Court to look into any objection to the decree of the Orphans' Court, except such as relates to the defendant, as legatee.

The decree, so far as it respects the plaintiff's note for Arcola lots, cannot as the case is presented, be drawn in question.

The testator, it is obvious, from the terms of his will, intended that the McCargo debt, if collectable, should bear the expense of its collection, and that the nett balance should be paid to the plaintiff, after the defendant had received her portion of it. As the money remaining in the hands of the plaintiff subject to the payment of the legacies, &c. was more than equal to the decree in favor of the defendant ; the Orphans' Court did not err in thus directing its payment.

COLLIER, C. J.—In respect to the plaintiff's note for Arcola lots, it is by no means certain, that in the present case, any question can be raised upon it. But be this as it may, we think the Orphans' Court very properly charged the amount of that note against the plaintiff, as cash. If an executor purchases a part of his testator's estate, he is, after the expiration of the term of credit, chargeable with the amount as cash, in the same manner as if he had collected money or converted property

belonging to it. True, it is the duty of an executor, to collect the debts due the estate he represents; but there is no process by which he can coerce a collection of himself, and as he is the party who is both to pay and receive the money, the law will regard him as in possession of it from the time it became due. The case of Douthitt's administrator v. Douthitt, 1 Ala. Rep. N. S. 594, is unlike the present. There, the administrator was not charged with his own note, but the notes of the debtors of the estate, remainiug in his hands as money. This Court reversed the decree, holding that the notes should not have been considered as cash.

The terms in which the debt due from McCargo, to the testator, are bequeathed, we think sufficiently indicate that it must bear the expense of its collection. It is the balance of the debt, or money, after deducting the defendants legacy that is given to the plaintiff, not a specific sum, or an amount equal to the balance of the note. And this conclusion becomes irresistible from an examination of the entire will. The testator makes a disposition of his property to his wife and children, assigning to each, a portion, with great particularity ; and as no disposition is made of any residuum, the fair inference is, that he had specifically devised and bequeathed his entire estate. If then the testator disposed of all his property specifically, an abatement of legacies would be necessary, if the expense of collecting the McCargo debt was chargeable upon the estate. Such an idea cannot be favored ; the reasonable intendment is, that the testator designed that each legatee should have what he gave them, and that the plaintiff should have whatever might be collected, or realized upon the note of McCargo, after deducting the specific legacy to the defendant. Such sum as might be retained by attornies for professional services or be paid for Court costs, would not come into the hands of the executors; or if it did, it would come subject to the charge, and could not of course become liable to pay the bequest to the legatee. By the terms, " balance of the debt or money," we must then understand to have been meant, all that the note was worth to the estate, after deducting from it, the charge of one thousand dollars. That the testator never intended to give a specific sum to the plaintiff, is further shewn, by the fact,

that the note was daily enlarging its amount by the accumulation of interest.

The account of the plaintiff for the collection of the note being disallowed, there remained in his hands, more than one thousand dollars, subject to the payment of the sum bequeathed to the defendant; and as her legacy was specific, and could not be abated, the last objection to the decree cannot be sustained.

The first section of the act of 1830, "to extend the powers of the County and Orphans' Court in certain cases and for other purposes" enacts, that "all decrees made by the Orphans' Court on final settlements on the accounts of executors, administrators, and guardians, shall have the force and effect of judgments at law, and executions may issue thereon for the collection of the several distributive amounts against such executor, administrator, or guardian." The second section provides, that when distribution of real or personal estate is decreed, each distributee, heir or devisee, may have an execution or attachment, one or both, &c. against the executor, administrator or guardian.

A statute amendatory of the act of 1830, was passed in 1832, which enacts, that "the County Courts on final settlements of executors, administrators and guardians, shall assess and insert in their decree, the amount of their distributive share." And further, "whenever any execution shall have issued on any decree made by the Orphans' Court, on final settlement of the accounts of executors, administrators or guardians, and is returned by the sheriff "no property found" generally, or as to a part thereof, execution may forthwith issue against the securities of such executor, administrator or guardian. Although legatees are not specially designated in the second section of the act of 1830, yet the provisions of that statute clearly indicate that they are entitled to the benefit of the remedy it affords. A different construction would make it to a great extent inoperative as it respects executors. But it is unnecessary to reason this point as we have heretofore taken the view of the act which is now intimated to be correct.

The fact that the defendant is a co-executor, is no ground of objection to a decree in her favor against the plaintiff, who has assets in hand to satisfy it. In this proceeding, her charac-

·ter of executrix, is lost sight of, and she is regarded only as a legatee. True, if she has entered into a bond jointly with the plaintiff, to execute the testator's will, upon the return of " no property found" to an execution against the plaintiff, she cannot under the act of 1832, sue an execution against the sureties in the bond. But the right to an execution, cannot at all affect the regularity of the decree.

· In the proceedings of the Orphans' Court, there is then no error, and its decree is consequently affirmed.