134 So.2d 760

**W. D. LOWRY, Jr.**

v.

**MAGNOLIA DEVELOPMENT COMPANY et al.**

4 Div. 76.

Supreme Court of Alabama.

Nov. 16, 1961.

Turner & Kettler, Luverne, for appellee Loeb.

Hill, Robison & Belser, Montgomery, for appellant.

**MERRILL, Justice.**

This appeal by W. D. Lowry, Jr., is from a final decree which apportioned certain funds, paid into court by Magnolia Development Company, between Lowry and H. B. Loeb, Jr. We shall hereafter refer to Magnolia Development Company as Magnolia. Appellant Lowry lives in Montgomery County; appellee Loeb resides in Escambia County.

In 1949, Lowry and Loeb jointly owned certain lands in Crenshaw County. In 1950, they executed a note for $600, with interest at eight per cent, payable to Lula Clyde Lowry, the mother of W. D. Lowry, Jr., and the next year they signed another note to her for $600. In 1958, the last will and testament of Lula Clyde Lowry was admitted to probate in Montgomery County, and Lowry was appointed as executor of the will.

A month later Lowry, as executor, filed suit on the notes in Montgomery County against himself and Loeb. A plea in abatement filed by Loeb was sustained by the trial court and affirmed here. Copeland v. Loeb, 269 Ala. 295, 112 So.2d 475. After the decision, Lowry resigned as executor and his sister was appointed executrix of their mother's estate. The executrix filed suit on the notes in Montgomery County against Lowry and Loeb. This action is still pending, awaiting the determination of the instant case.

In 1957, Lowry and Loeb sold their lands in Crenshaw County to Magnolia and received a mortgage from Magnolia securing a debt of $11,000, with interest at six per cent, and due December 12, 1958.

The instant case was initiated by Magnolia on December 12, 1958, as an injunction proceeding against Lowry and Loeb, as mortgagees, to prevent a threatened foreclosure of the mortgage. A temporary injunction was issued and later Magnolia amended its petition alleging that it had paid the mortgage indebtedness into court, and asked for a satisfaction of the record. It was alleged that a dispute existed between Lowry and Loeb as to the sums each was entitled to receive from the proceeds that had been paid into court. Lowry filed his claim in the interpleader action under Equity Rule 36(a). The effect of the decree of the trial court was that Lowry and Loeb should share equally in the proceeds paid into court and that Lowry's claim of contribution from Loeb on the notes due the estate should be denied.

The principle stated in Copeland v. Loeb, 269 Ala. 295, 112 So.2d 475, 477, and the one from which we must proceed follows:

"It is a settled doctrine in this Court that when a debtor becomes executor of the estate of the creditor, his personal indebtedness to the estate is extinguished as a matter of law and is converted and transmuted for all practical purposes, from a chose in action into a chose in possession, and for which he is liable on final settlement of his administration. This rule obtains without regard to the solvency of the debtor so appointed or the duration of his administration. The fact that there is a dispute as to the existence of the indebtedness or the amount thereof does not oust the jurisdiction of the court in that one purpose of the settlement is to ascertain the assets for which the executor has become liable to account. The underlying reason supporting this rule is that the executor becomes both payor and

payee; that is, the right to demand and the obligation to pay exist in the same person; the executor cannot sue himself and there is no process by which the executor can coerce a collection of himself. See Childress v. Childress, 3 Ala. 752; Purdom v. Tipton, 9 Ala. 914; Miller v. Irby's Adm'r, 63 Ala. 477; Wright v. Lang, 66 Ala. 389; Cook v. Cook, 69 Ala. 294; Arnold v. Arnold, 124 Ala. 550, 27 So. 465; Lindsey v. Lindsey, 229 Ala. 578, 158 So. 522; Faust v. Faust, 248 Ala. 660, 29 So.2d 133; Webb v. Webb, 250 Ala. 194, 33 So.2d 909; 8 A.L.R. 92.

"The personal indebtedness of the executor to the testator-creditor whereby he might have otherwise been sued, was therefore extinguished. Thus the administrator ad litem could not maintain this action at law based upon Lowry's personal indebtedness. See Hodge v. Hodge, 90 Me. 505, 38 A. 535, 40 L.R.A. 33; Bassett v. Fidelity & Deposit Co., 184 Mass. 210, 68 N.E. 205; 21 Am.Jur., Executors & Administrators, § 194; 8 A.L.R. 92."

Both parties to this appeal concede that the personal indebtedness of Lowry to the estate is extinguished and that he will be chargeable on final settlement with the amount of the debt. But they disagree on the question next arising out of the fact that the two notes have not been paid by either Lowry or Loeb.

Lowry contends that since his debt was extinguished and he must account for the full amount on final settlement, that, as to the fund paid into court, "the entire fund is due him; actually, more than the entire fund since he and he alone is the only person that can claim against Loeb, either by way of contribution or directly. This is true, for in the suit by the present Executrix against Loeb and Lowry, Loeb can show by judicial decree that the debt is extinguished and Lowry is the person who extinguished the debt."

This contention presents a question of first impression in this court. We cannot agree with appellant's contention that the Copeland case or the authorities therein hold that Loeb's part of the debt was extinguished because Lowry was appointed executor. We quote with approval from the opinion of Judge Thagard:

"* * * the Court (in Copeland v. Loeb, 269 Ala. 295, 112 So.2d 475) held that the *personal* indebtedness of Lowry to the estate was extinguished and, as to him, it was converted into a claim against him as executor. The opinion was completely silent as to the effect of the appointment of Lowry as executor upon the indebtedness of Loeb to the estate of the decedent. No case was cited by counsel for either party on the precise question in point and this Court has been able to find no Alabama decision throwing any light on the question. The Court thinks, however, that the contention of counsel for Lowry on the point is unsound.

"Prior to the death of Mrs. Lowry, and after the indebtedness came due, Mrs. Lowry might have sued Lowry individually for the entire indebtedness or Loeb individually for the entire indebtedness or she might have sued them jointly and upon obtaining a judgment against them jointly she might have collected the entire indebtedness from whichever of them might have had the property subject to execution. In other words, if Loeb was solvent and Lowry was insolvent she might have collected the entire indebtedness from Loeb, in which event Loeb would have become the owner of the judgment as against Lowry for one-half of the debt. If the appointment of Lowry as executor had the effect of extinguishing the claim against Loeb the estate might have been put in the position of having lost its claim against a solvent debtor through no fault of the creditors of the estate or the beneficiaries under the will. Furthermore,

until the appointment of Lowry as executor Loeb was individually liable for the entire indebtedness as well as jointly liable with Lowry but, under the theory advanced by counsel for Lowry, Loeb could under no circumstances be thereafter held liable for the entire indebtedness but only responsible to Lowry by way of contribution to the extent of one-half of the indebtedness. Otherwise stated, if some one other than Lowry had been appointed as personal representative of the decedent's estate said personal representative might have proceeded against Loeb and collected the entire indebtedness from him, but since Lowry was appointed executor of the estate Loeb at the most is liable for one-half of the indebtedness and that only to Lowry by way of contribution. Such a result is so harsh as to be unthinkable."

This also applies to appellant's argument that he is entitled to contribution from Loeb out of the funds paid into court for division between them. With this contention we cannot agree.

In 13 Am.Jur., Contribution, § 10, p. 14, we read:

"While it is true that a common burden or obligation resting upon the parties is essential to the accrual of the right of contribution, no cause of action arises merely because of the relationship of the parties or because of the claimant's liability on such obligation. The right to contribution becomes complete and enforceable only upon a payment or its equivalent by the claimant discharging, satisfying, or extinguishing the whole or more than his just and equitable share of the common obligation. Until then a claim for contribution is contingent only. In other words, the discharge by one common obligor of more than his fair share of the common liability is what

gives rise to the right of contribution, whether the common obligation is imposed by contract or grows out of tort. It is said that contribution presumes the payment and extinguishment of the debt by one for the benefit of all."

See, also, Am.Law Inst. Restatement, Restitution, §§ 81, 82; Lopez v. Lopez (Fla.), 90 So.2d 456.

The undisputed evidence of appellant is that the notes or the debt have not been paid. His request for contribution is premature because he has not satisfied the debt.

Three of our cases tend to support our holding although the same question was not involved. In Flinn v. Carter, 59 Ala. 364, it was said:

"It is true that in certain cases where a party is a debtor or responsible for a debt, and in the capacity of administrator, or otherwise, in trust for others, becomes the creditor to whom payment of the debt is to be made, it will be conclusively presumed when he is brought to a settlement, that he has received payment from himself. The fact may be, though, as the courts well know, that such payment has not been made: and the parties are free to deal with each other in the meantime, according to the real fact.

* * * * * *

"Legal presumptions should, like legal fictions, be adopted only to promote justice not to defeat it, and not to defeat the lawful acts and intentions of parties who are sui juris. * * *"

In Ligon v. Ligon, 84 Ala. 555, 4 So. 405, 407, the court said:

" * * * When the administrator becomes the purchaser of real estate sold by himself as such, he occupies antagonistic relations—of purchaser claiming an adverse right, and of administrator, representing the heirs as to the collection and distribution of the

purchase money. Having the right to receive payment as administrator, and being under obligation to pay as such purchaser, presumed payment arises when the purchase money matures so far as to render him chargeable therewith in the settlement of his administrator's accounts, but not for the purpose of entitling him to a conveyance of title. So long as he continues administrator, and the purchase money is unaccounted for, there is no payment, such as is required by the statute, to authorize the court to order a conveyance of title. * * *"

In Interstate Land & Investment Co. v. Logan, 196 Ala. 196, 72 So. 36, 40, the court said:

"For the reason of all the cases we have cited, the right of exoneration is not an absolute rule of law, but is of purely equitable origin. It is never allowed to work injustice, being subject to modification by particular circumstances affecting the rights and equities of the several purchasers as between themselves. This right of necessity must rest upon peculiar equitable reasons, and if no such reasons exist the right of exoneration does not exist. * * *"

We hold that the indebtedness of the joint debtor Loeb was not extinguished as a matter of law upon the appointment of Lowry as executor of the estate; and that a mere presumption of payment arising from a legal fiction is not sufficient to give a right of contribution to the person presumed to have paid the indebtedness, when in fact it has not been paid.

We have discussed those assignments of error sufficiently argued in brief and find no reversible error.

Affirmed.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.